IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARLOS TOVAR-MENDOZA,

        Petitioner,

vs.                                                          2:18-cv-00982-KWR-LF

RICHARDO MARTINEZ, Warden,
et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSTION

THIS MATTER comes before the Court on Petitioner Carlos Tovar-Mendoza's

Consolidated Rule 60 Motion filed on October 25, 2021.  Doc. 44.  The respondents filed their

answer to Mr. Tovar-Mendoza's petition on January 24, 2022.  Doc 50.  The Court gave Mr.

Tovar-Mendoza thirty (30) days after the response was filed to file an optional reply.  Doc. 46 at

4.  To date, Mr. Tovar-Mendoza has not filed a reply, and the time to do so has passed.

The Honorable Kea W. Riggs referred this case to me to conduct hearings, if warranted,

including evidentiary hearings, and to perform any legal analysis required to recommend to the

Court an ultimate disposition of the case.  Having read the submissions of the parties, and having

reviewed the record and the relevant law, I find that Mr. Tovar-Mendoza's Rule 60 motion is not

well taken, and I recommend that the Court DENY it.  Alternatively, I recommend that the Court

find that Mr. Tovar-Mendoza's claims fail on the merits.  I also recommend that the Court

DENY Mr. Tovar-Mendoza's request for an evidentiary hearing and DENY a certificate of

appealability.

## I.    Background Facts and Procedural Posture[1]

On October 18, 2002, a grand jury in Bernalillo County, New Mexico, returned an indictment against Mr. Tovar-Mendoza for kidnapping, criminal sexual penetration ("CSP"), and aggravated battery against a household member for an incident that occurred on October 8, 2002. Doc. 50-1 at 1–3 (case number D-202-CR-2002-3530).  On April 3, 2003, the government filed an information against Mr. Tovar-Mendoza for CSP that occurred on September 4, 2002, which generated a separate criminal case, case number D-202-CR-2003-1063.  *Id*. at 4–6.  In both cases, the alleged victim was Mr. Tovar-Mendoza's ex-wife, Lilia Tovar.  *Id*. at 1–6.  Mr. Tovar-Mendoza hired Anthony Ayala to defend him against these charges.  *See id*. at 16, 40.  On April 14, 2003, Mr. Tovar-Mendoza entered into a Repeat Offender Plea and Disposition Agreement. Doc. 50-1 at 12–17.  Under the terms of the agreement, he pled no contest to second-degree kidnapping, second-degree CSP, and third-degree aggravated battery against a household member related to the incident that occurred on October 8, 2002, and second-degree CSP for the September 4, 2002 incident.  *Id*.  The agreement provided that Mr. Tovar-Mendoza could be ordered to serve a period of incarceration of up to thirty years.  *Id*. at 14.  In a judgment filed on July 16, 2003, the Honorable Judge Albert S. "Pat" Murdoch sentenced Mr. Tovar-Mendoza to a

---

[1] The procedural history in this case is complex.  To understand the background facts and procedural posture, the Court takes judicial notice of Mr. Tovar-Mendoza's state criminal cases, D-202-CR-2011-03587, D-202-CR-2003-01063, and D-202-CR-2002-03530, and his prior federal habeas case, No. 05-cv-1303-BB-CG.  *See Mitchell v. Dowling*, 672 F. App'x 792, 794 (10th Cir. 2016) (Habeas courts may take "judicial notice of the state-court docket sheet to confirm the date that each [state] motion was filed"); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records . . . concerning matters that bear directly upon the disposition of the case at hand").

term of 30 years of imprisonment with five years suspended for an actual term of 25 years, and five years of supervised probation. *Id*. at 18–23.

Mr. Tovar-Mendoza unsuccessfully sought post-conviction relief in the state courts. *Id*. at 24–76, 83–131, 149. Having received no relief in the state courts, on December 14, 2005, Mr. Tovar-Mendoza filed a *pro se* federal Application for a Writ of Habeas Corpus under 28 U.S.C. § 2254 with the help of an attorney. *See Mendoza, et al v. Romero, et al*, 6:05-cv-01303-BB-CG, Docs. 1, 7. Although not represented at the beginning of his federal habeas case, Mr. Tovar-Mendoza was represented later in the case. *See id.*, Docs. 34, 49. The district court ultimately denied Mr. Tovar-Mendoza's petition. *Id*., Docs. 125, 132. On June 5, 2009, Mr. Tovar-Mendoza appealed the district court's decision to the Tenth Circuit Court of Appeals with the assistance of counsel. *Id*., Doc. 133. On November 12, 2010, the Tenth Circuit reversed the judgment of the district court and remanded the case with instructions to conditionally grant Mr. Tovar-Mendoza's petition, "subject to the State of New Mexico allowing Tovar to withdraw his no contest plea and proceed on the criminal charges against him." *Id.*, Doc. 142.

United States District Judge Bruce Black remanded the case to the state and issued multiple orders conditionally granting Mr. Tovar-Mendoza's petition, culminating in an order on October 31, 2011, for "[t]he State of New Mexico to either retry Mr. [Tovar-Mendoza] within eighteen months of the date of the original remand Order, which was filed on January 13, [2011],[2] or it shall release him from custody and the charges will be dismissed with prejudice." Doc. 50-1 at 198–200, 248.

---

[2] The Third Amended Order Upon Remand states that the original remand order was filed on "January 13, 2012." Doc. 50-1 at 248. This is a typographical error as the date of the original order is "January 13, 2011*," id.* at 199, and the third amended order is dated October 31, 2011, *id.* at 248.

The state district court set a trial date of November 14, 2011. *Id*. at 252. On October 28, 2011, through his counsel Robert Tangora and Steve Archibeque, Mr. Tovar-Mendoza filed a motion for a continuance and on November 3, 2011, an amended motion for continuance. *Id*. at 252–55, 257. In that motion, Mr. Tangora explained that he accepted the case with the understanding that it was "ready to go." *Id*. at 252. He was not informed of DNA evidence until October 19, 2011, at the hearing on the state's motion to join the new indictment concerning the September 2, 2002 rape charge. *Id.* Mr. Tangora asked for additional time to consult with an expert regarding the DNA evidence and to further investigate the facts regarding the September 2002 incident. *Id*. at 252–53. Mr. Tangora explained that as a result of joining the September 2002 accusation together with the October 2002 accusation, new and additional witnesses needed to be located and interviewed. *Id*. at 253.

New Mexico Second Judicial District Court Judge Stan Whitaker denied the motion for a continuance. *Id*. at 256–58. The trial took place as scheduled before Judge Whitaker. *See* https://caselookup.nmcourts.gov/caselookup/app (last visited 8/2/2023). Mr. Tovar-Mendoza was found guilty of kidnapping, CSP (personal injury), aggravated battery against a household member, and CSP (force or coercion), but not guilty as to CSP (commission of a felony). Doc. 50-1 at 298–302. Mr. Tangora filed a motion for a new trial on December 1, 2011, which Judge Whitaker denied on December 8, 2011. *Id*. at 303–04, 306.

On February 8, 2012, Mr. Tangora advised the state court that his attorney-client relationship with Mr. Tovar-Mendoza was "irrevocably damaged," and Mr. Tangora asked to withdraw from the case and requested that the court appoint new counsel. *Id*. at 307–08. Judge Whitaker denied counsel's motion to withdraw. *Id*. at 309.

A month later, on March 6, 2012, Mr. Tovar-Mendoza appeared with Mr. Tangora for sentencing before Judge Whitaker.  *Id*. at 313.  Judge Whitaker sentenced Mr. Tovar-Mendoza to 33 years in prison with 8 years suspended, for an actual term of incarceration of 25 years.  *Id*.  at 315–16.  Judge Whitaker placed Mr. Tovar-Mendoza on parole for five years to life after release, and placed him on supervised probation for a term of 5 to 20 years.  *Id*. at 317.  On March 19, 2012, Mr. Tangora moved to withdraw for a second time, stating that "Mr. Tovar filed a disciplinary complaint against counsel raising a conflict of interest pursuant to Rule 16-107 NMRA 2012."  *Id*. at 310.

In April 2012, Mr. Tovar-Mendoza hired Scott Davidson to pursue an appeal.  Doc. 45-1. Mr. Tovar-Mendoza states in his declaration that his family hired Scott M. Davidson "[t]o represent [him] on a Habeas Corpus proceeding that took place in the Second [Judicial] District in Albuquerque, New Mexico case number[s] CR No. D-202-CR-2002-3530, CR No. D-202-[CR-]2011-3587."  *Id*.  Mr. Davidson was "in charge of New Mexico Court of Appeals, New Mexico Supreme Court, post-conviction in the State of New Mexico.  Finalizing the state process."  *Id.*

On May 14, 2012, Mr. Davidson filed a notice of appeal in the state court regarding D-202-CR-2002-3530 "appealing the Court's judgment, entered May 7, 2012 to the New Mexico Court of Appeals."  Doc. 50-1 at 320–21.  On July 13, 2012, Mr. Davidson filed Appellant's Docketing Statement in the New Mexico Court of Appeals.  *Id*. at 344–50.  The issues on the appeal included "[w]hether the district court erred in denying Mr. Tovar's motion to dismiss due to lack of venue."  *Id*. at 348.  Mr. Davidson filed a separate notice of appeal regarding D-202-CR-2011-3587 on June 7, 2012.  *Id*. at 332–33.  A notice of summary affirmance with regard to both cases was issued by the New Mexico Court of Appeals on August 10, 2012.  *Id*. at 351–55.

Meanwhile, on May 18, 2012, the State of New Mexico filed a supplemental information against Mr. Tovar-Mendoza in the district court seeking to enhance Mr. Tovar-Mendoza's sentence under New Mexico's habitual offender statute. *Id.* at 329-30. Following a hearing on March 6, 2012, the district court enhanced Mr. Tovar-Mendoza's sentence by one year. Doc. 50-2 at 19–22.

On October 19, 2012, while awaiting an amended judgment that included the habitual offender enhancement, Mr. Davidson filed an unopposed motion to hold the appellate proceedings in abeyance "to avoid piecemeal review" by the appellate court. Doc. 50-1 at 360. The appellate court denied the motion to hold the proceedings in abeyance. *Id.* at 362. Back in state district court, Judge Whitaker issued an amended judgment to reflect the habitual offender enhancement on January 29, 2013. Doc. 50-2 at 19–22.

On February 21, 2013, Mr. Davidson filed a Notice of Intent to Waive the Filing of a Memorandum in Opposition in the New Mexico Court of Appeals. *Id.* at 24–25. He explained that filing a memorandum "is unlikely to change the proposed outcome, and would only prolong the exhaustion of appellate remedies, delaying Mr. Tovar's filing of a post-conviction petition seeking relief from this invalid conviction." *Id.* at 24. On April 1, 2013, the New Mexico Court of Appeals affirmed Mr. Tovar-Mendoza's sentence. *Id.* at 28–29. Mr. Tovar-Mendoza had 30 days to file a petition for writ of certiorari with the New Mexico Supreme Court, Rule 12-502(B) NMRA, but did not do so. Thus, Mr. Tovar-Mendoza's judgment became final on May 1, 2013.[3]

---

[3] This Court earlier found that Mr. Tovar-Mendoza's "criminal judgment . . . became final no later than June 18, 2013." Doc. 16 at 2. But this date was calculated from the date the Court of Appeals issued its mandate, not the date it issued its decision. The deadline for filing a petition for certiorari begins to run from the date that the Court of Appeals issues its decision, not from the date it issues its mandate. *See Wesley v. Snedeker*, 159 F. App'x 872, 873 (10th Cir. 2005) (unpublished); *Perry v. Pacheco*, 2012 WL 13076579, at * 3 (D.N.M. Feb. 29, 2012) (petitioner's judgment became final 30 days after New Mexico Court of Appeals issued its

*See Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires").

Just under a year later, on April 28, 2014, Mr. Davidson filed a petition for writ of habeas corpus in the New Mexico district court. *Id*. at 31–121. Mr. Davidson argued that the trial court denied Mr. Tovar-Mendoza effective assistance of counsel by denying a continuance and by allowing two unrelated allegations of CSP to be joined in a single trial. *Id*. at 32. After full briefing and an evidentiary hearing, Judge Whitaker denied the petition on June 1, 2016. *Id*. at 167–88. Judge Whitaker analyzed the ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) and the New Mexico Constitution and concluded that "Petitioner has failed to demonstrate ineffective assistance of counsel." Doc. 50-2 at 167–88. A couple of months later, on August 5, 2016, Mr. Davidson filed a petition for writ of certiorari to the New Mexico Supreme Court. *Id*. at 189–90. The New Mexico Supreme Court denied certiorari on February 7, 2017. *Id*. at 295.

On November 27, 2017, Mr. Tovar-Mendoza, proceeding pro se, filed a second petition for a writ of habeas corpus in the state district court.[4] *Id*. at 296–319. On March 2, 2018, Judge

---

decision). Thus, the Court believes that the correct date that Mr. Tovar-Mendoza's judgment became final is May 1, 2013, not June 18, 2013.

[4] Mr. Tovar-Mendoza raised three grounds for relief in his petition:

1. ineffective assistance for "counsel's failure to object to the absence of [a] limiting jury instruction and tender and/or request [a] limiting jury instruction on the permissible scope and range of prior bad acts (uncharged federal felony conviction)";
2. ineffective assistance for "failure to challenge ex post facto application of [a] sentencing statute for purposes of the imposed and or calculated judgment and sentence"; and
3. ineffective assistance on direct appeal. Doc. 50-2 at 304.

Whitaker granted in part and dismissed in part the second petition. *Id*. at 430–34. Judge

Whitaker found that

> Petitioner's sentence was imposed in an illegal manner with regards to the
> imposition of a probation period of 5 to 20 years and a parole period of 5 to life.
> Petitioner should only be subject to a five (5) year probation period pursuant to
> NMSA § 31-20-5 and a two (2) year period of parole pursuant to NMSA § 31-21-
> 10.

Doc. 50-2 at 434. But Judge Whitaker dismissed the "ineffective assistance of counsel claims as

having been previously raised and litigated." *Id.* at 432. Judge Whitaker issued a second

amended judgment to reflect the correction to Mr. Tovar-Mendoza's probation and parole

sentence. *Id*. at 426–29. Mr. Tovar-Mendoza filed a pro se petition for a writ of certiorari to the

New Mexico Supreme Court on April 27, 2018, arguing that the district court abused its

discretion in summarily dismissing his habeas corpus petition and by not conducting an

evidentiary hearing. *Id*. at 435–442. On May 2, 2018, the New Mexico Supreme Court denied

the petition for a writ of certiorari. *Id*. at 652.

On October 18, 2018, Mr. Tovar-Mendoza filed a document in this Court entitled "Entry

of Appearance Pro Se," which the Court construed as a petition for habeas corpus and docketed

as a 28 U.S.C. § 2254 petition. Doc. 1. In this petition, Mr. Tovar-Mendoza asked the Court to

apply equitable tolling to allow him to file the petition that he apparently believed would have

been timely if filed in September of 2018. *Id*. at 2, 9. On November 29, 2018, Mr. Tovar-

Mendoza filed an amended petition. Doc. 7. The amended petition appeared to raise claims for

ineffective assistance of trial counsel, instructional error, and ineffective assistance of appellate

counsel. *See* Doc. 18 at 3–4. The Court screened the amended petition under Habeas Corpus

Rule 4 and determined it was time-barred because it was not filed within the one-year limitations

period set forth in 28 U.S.C. § 2244(d)(1)(A). Doc. 16. The order set forth the legal standard for

statutory/equitable tolling and directed Mr. Tovar-Mendoza to show cause why the case should not be dismissed. *Id.* Mr. Tovar-Mendoza filed his show-cause response on March 26, 2020. Doc. 17. On March 31, 2020, Judge Riggs dismissed Mr. Tovar-Mendoza's petition finding that equitable tolling did not apply and that his show-cause response did not establish grounds for tolling. Doc. 18. The Court entered a final judgment on March 31, 2020. Doc. 19.

Mr. Tovar-Mendoza filed a series of motions, supplements, and notices seeking relief from the ruling dismissing his 20 U.S.C. § 2254 claims as time-barred. Docs. 20–22, 24–31. The Court struck all post-judgment filings and permitted Mr. Tovar-Mendoza to file a single motion for relief from judgment. Doc. 32. Thereafter, attorney David Lewarchik entered an appearance for petitioner (Doc. 33) and, after several extensions (Docs. 34, 36, 37, 38, 39, 40, 42), on October 25, 2021, Mr. Lewarchik, on behalf of Mr. Tovar-Mendoza, filed a Consolidated Rule 60 Motion. Doc. 44. On December 6, 2021, Mr. Tovar-Mendoza filed a motion for leave to file a supplementary affidavit. Doc. 45. On September 27, 2022, Judge Riggs granted Mr. Tovar-Mendoza's motions in part and reopened the case. Doc. 46. The Court explained that the representations in Mr. Tovar-Mendoza's motion and declaration provided "additional context [that] would ordinarily be sufficient for the Amended Petition to survive initial review." *Id.* at 3. The Court directed respondents to file an answer addressing the merits of the claims and instructed that respondents "may also seek dismissal, in the alternative, based on procedural barriers such as timeliness or exhaustion." *Id*. at 4. Respondents filed their answer on January 24, 2023. Doc. 50. Mr. Tovar-Mendoza did not file a reply.[5]

---

[5] The Court provided Mr. Tovar-Mendoza the opportunity to file a reply. Doc. 46 at 4 ("Petitioner, through counsel, may file an optional reply within thirty (30) days after the response is filed.").

In his Rule 60 motion, Mr. Tovar-Mendoza argues that he is entitled to equitable tolling for two reasons.  First, he contends he "lacked the facility with the English language needed to understand the Statue of Limitations under the [AEDPA], including the exhaustion requirement." Doc. 44 at 5.  Second, he argues that "ineffective assistance of counsel caused the missed deadline."  *Id*.  Respondents counter that the doctrine of equitable tolling should not apply to Mr. Tovar-Mendoza's petition because he cannot show that an extraordinary circumstance stood in his way and prevented him from filing.  Doc. 50 at 16–24.  In the alternative, respondents address the merits of Mr. Tovar-Mendoza's claims.  They contend that Mr. Tovar-Mendoza has procedurally defaulted on Grounds Two and Three of his petition, and that Ground One is meritless.  Doc. 50 at 24–32.  Respondents also assert that an evidentiary hearing is unnecessary. *Id*. at 20–21.  For the following reasons, I recommend that Mr. Tovar-Mendoza's petition be dismissed with prejudice.

## II.    Legal Standards

### A.    Rule 60(b)

"Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Cashner v. Freedom Stores, Inc*., 98 F.3d 572, 576 (10th Cir. 1996).  Rule 60 (b) states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).  The Tenth Circuit has described Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case."  *Johnson v. Spencer*, 950 F.3d 680, 700–01 (10th Cir. 2020) (internal quotation and citation omitted).  The rule should be liberally construed when substantial justice will be served, but "relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances."  *Id*.

B.  Federal Habeas Claims under AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.  Petitions for a writ of habeas corpus by a person in state custody under the AEDPA are governed by a one-year statute of limitations.  28 U.S.C. § 2244(d).  Section 2244(d)(1) states:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d) further provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this

subsection." 28 U.S.C. § 2244(d)(2).  The one-year AEDPA statute of limitations for filing a § 2254 petition begins to run from the time the judgment on the petitioner's conviction and sentence becomes final.  *See* 28 U.S.C. § 2244(d).  The judgment becomes final at the conclusion of direct appellate review or expiration of the time for seeking direct appellate review.  28 U.S.C. § 2254(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (holding that "for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires").

In New Mexico, when a petitioner seeks discretionary review of a New Mexico Court of Appeals decision, "[t]he petition for writ of certiorari shall be filed with the Supreme Court clerk within thirty (30) days after final action by the Court of Appeals."  Rule 12-502(B) NMRA.  A petition seeking certiorari review of a state district court's denial of a Rule 5-802 petition for a writ of habeas corpus "[s]hall be filed with the Supreme Court clerk within thirty (30) days of entry of the district court's order denying the petition."  Rule 12-501(B) NMRA.

The AEDPA's one-year statute of limitations is tolled when a state habeas corpus petition is filed.  However, tolling occurs only when "a properly filed application for [s]tate post-conviction" relief is "pending."  *See id.* § 2244(d)(2).  A state habeas petition is "pending"—and tolls the running of the statute of limitations—from the date it is filed until it has achieved final resolution through the state's post-conviction procedures.  *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *see also Holland v. Florida*, 560 U.S. 631, 635, 638 (2010).  To determine the point at which a petitioner's state habeas proceedings become complete, the Court looks to the state's procedural rules.  *See Wade v. Battle*, 379 F.3d 1254, 1260–62 (11th Cir. 2004).  The one-year statute of limitations clock begins to run again when the proceedings on the state habeas corpus petition are finally concluded.  *Holland*, 560 U.S. at 638 (state habeas corpus proceedings were

concluded, and statute of limitations clock began to tick when the State Supreme Court issued its mandate).  A § 2254 petition filed after the one-year period has expired is time-barred.  28 U.S.C. § 2244(d).[6]

C.  Equitable Tolling

The one-year statute of limitations may be subject to equitable tolling.  Equitable tolling is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.  *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000); *Burger v. Scott,* 317 F.3d 1133, 1141 (10th Cir. 2003).  Ignorance of the law, ignorance of the limitation period, and inability to obtain legal assistance do not excuse the failure to file within the statutory time period.  *Marsh v. Soares*, 223 F.3d

---

[6] Given these principals, the respondents calculated Mr. Tovar-Mendoza's one-year statute of limitations as follows:

- Mr. Tovar-Mendoza's conviction became final on **May 1, 2013**, (which was the thirtieth day after final action by the New Mexico Court of Appeals' affirmance of Mr. Tovar-Mendoza's conviction).  Accordingly, Mr. Tovar-Mendoza had until **Friday, May 2, 2014,** to file a timely federal habeas petition.

**-361 days passed-**

- Mr. Tovar-Mendoza stopped the AEDPA clock when attorney Scott Davidson filed the **April 28, 2014** state habeas petition.  Doc. 50-2 at 31–58.

**–Four days remain for filing a federal petition–**

- State district court denied Mr. Tovar-Mendoza's state habeas petition on June 1, 2016, and on **February 7, 2017**, the New Mexico Supreme Court denied his request for discretionary review.

**–Mr. Tovar-Mendoza then had 15 days, or until February 22, 2017, to seek rehearing.  He did not do so.–**

- Therefore, his remaining four days began to run from February 23, 2017, and Mr. Tovar-Mendoza had until Monday, **February 27, 2017**, to file a timely petition.  *See* Doc. 50 at 19.

1217, 1220 (10th Cir. 2000); *Sanders v. Mahaffey,* 242 F.3d 390, 2000 WL 1730893, at *2 (10th

Cir. Nov. 22, 2000) (unpublished); *Washington v. United States,* 221 F.3d 1354, 2000 WL

985885, at *2 (10th Cir. July 18, 2000) (unpublished).  Language barriers and the inability to

obtain legal materials in one's native language also are excluded as an extraordinary

circumstance.  *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008).

**III.    Discussion**

      A.  <u>Mr. Tovar-Mendoza's Rule 60 Motion Should be Denied.</u>

      In this case, Mr. Tovar-Mendoza does not dispute that the one-year limitations period has

expired.[7]  He contends, however, that equitable tolling should apply to allow this case to go

forward.  Doc. 44.  "Generally, equitable tolling requires a litigant to establish two elements: (1)

that he has been pursuing this right diligently, and (2) that some extraordinary circumstances

stood in his way."  *Yang*, 525 F.3d at 928.  It is the inmate's burden to show "specific facts that

support his or her claim of extraordinary circumstances and due diligence."  *Id*.

      1.  *Extraordinary Circumstances*

      Here, Mr. Tovar-Mendoza first argues that extraordinary circumstances exist because a

language barrier prevented him from understanding the statute of limitations under the AEDPA.

Doc. 44 at 5.  He asserts that because he has a "marginal ability to communicate and read the

---

[7] As explained above, *see supra* note 5, this Court found that Mr. Tovar-Mendoza's criminal judgment became final on June 18, 2013, and that the one-year limitation period expired on April 3, 2017.  Doc. 16 at 3, 5.  As respondents point out, however, the New Mexico Court of Appeals issued its opinion affirming the district court's judgment and sentence on April 1, 2013.  Doc. 50-2 at 28.  Respondents, therefore, calculated that the one-year limitation period for filing a federal habeas petition—after tolling for the period that the state habeas petition was pending—expired on February 27, 2017.  Doc. 50 at 19.  Regardless of whether the one-year limitation period expired on April 3, 2017, or February 27, 2017, Mr. Tovar-Mendoza did not file his habeas corpus petition in this Court until October 18, 2018.  Doc. 1.  Thus, Mr. Tovar-Mendoza failed to file his petition within the AEDPA's one-year limitations period.

English language," *id.* at 8, "he could not properly interpret the caselaw and statutes available to him as they were in English, not Spanish," *id*. at 5; *see also* Doc. 45-1 at 1.  Mr. Tovar-Mendoza also asserts that the law library in the Otero County Prison Facility does not have law books translated into Spanish.  Doc. 45-1 at 1.  The Tenth Circuit rejected this same argument in *Yang*.

In *Yang*, the petitioner complained that he lacked proficiency in the English language and there was no written notice or law books in the petitioner's first language that notified him of the one-year limitations period.  *Yang*, 525 F.3d at 928–29.  Consequently, he did not learn of the limitation period until another inmate was willing to assist him.  *Id*.  The Tenth Circuit found that Yang's inability to speak or write in English was not an extraordinary circumstance warranting equitable tolling.  *Id*. at 929–30.  The court further held that the department of corrections "is under no duty to provide access to legal materials in a prisoner's preferred language."  *Id*. at 930.

Here, as in *Yang*, Mr. Tovar-Mendoza's allegation that he "lacked facility with the English language needed to understand the Statue of Limitations under the [AEDPA]," Doc. 44 at 5, falls short of the facts needed to demonstrate extraordinary circumstances.  *Yang*, 525 F.3d at 930.  While Mr. Tovar-Mendoza complains that a language barrier prevented him from understanding the limitations period, the Tenth Circuit has held that this language barrier is not sufficient to warrant equitable tolling.  *See id.*  Moreover, Mr. Tovar-Mendoza already had experience with the federal habeas process; he therefore had an understanding of the procedures under the AEDPA, including its one-year statute of limitations, regardless of his language barrier.  *See Mendoza, et al v. Romero, et al*, 6:05-cv-01303-BB-CG, Doc. 1.  Mr. Tovar-Mendoza's lack of facility in English does not warrant equitable tolling.

Next, Mr. Tovar-Mendoza contends that he directed his counsel to preserve his right to file a federal habeas corpus petition and his counsel did not do so, and that this warrants

equitable tolling.  Doc. 44 at 5.  The evidence, however, does not support this contention.  In his declaration, Mr. Tovar-Mendoza identifies Scott Davidson as the attorney he contends "he directed" to preserve his right to file a federal habeas petition.  Doc. 45-1 at 1.  In his sworn declaration, Mr. Tovar-Mendoza states that Mr. Davidson was hired "[t]o represent [him] on a Habeas Corpus proceeding that took place in the Second District, in Albuquerque, New Mexico." Doc. 45-1 at 1.  Mr. Davidson "would be in charge of New Mexico Court of Appeals, New Mexico Supreme Court, post-conviction in the State of New Mexico. Finalizing the state process."  *Id.*  Mr. Tovar-Mendoza states that he told Mr. Davidson "more than once and from the begin[n]ing and continuo[u]sly my opportunity to proceed to the Federal Courts" and "[n]ot to lose the op[p]ortunity."  *Id*.  Mr. Tovar-Mendoza makes no assertion, however, that he instructed Mr. Davidson to file a federal habeas petition, and there is no indication that the filing of a federal habeas petition was within the scope of Mr. Davidson's representation.

In fact, Mr. Davidson appears to have performed the duties for which he was engaged. Mr. Davidson filed a notice of appeal in the state court for both D-202-CR-2002-3530 and D-202-CR-2011-3587.  When the appeal was not successful, Mr. Davidson filed a petition for writ of habeas corpus in the New Mexico district court and subsequently filed a petition for writ of certiorari to the New Mexico Supreme Court.  Mr. Tovar-Mendoza had until February 27, 2017, to file a habeas petition in federal court.  Mr. Davidson took proper steps to provide the opportunity for Mr. Tovar-Mendoza to file a habeas petition in federal court.  Nothing in the record shows that Mr. Davidson caused Mr. Tovar-Mendoza to miss the federal deadline.  Thus, an evidentiary hearing is unnecessary to determine whether Mr. Tovar-Mendoza's tolling claim is valid.  The record establishes that it is not.

Mr. Tovar-Mendoza further argues that Mr. Davidson's inaction was not simply negligent, but that Mr. Davidson abandoned Mr. Tovar-Mendoza after he instructed Mr. Davidson to preserve his federal claims and Mr. Davidson ignored that request.  Doc. 44 at 5.  Again, the evidence does not support this claim, and it is without merit.  Mr. Tovar-Mendoza's reliance on *Maples v. Thomas*, 565 U.S. 266 (2012) and *Fleming v. Evans*, 481 F.3d 1249 (10th Cir. 2007) is unavailing.

In *Maples*, the Supreme Court excused Mr. Maples' procedural default when he was wholly abandoned by his attorneys.  Mr. Maples was a prisoner in Alabama who depended on pro bono attorneys working in a New York law firm and appearing *pro hac vice* through local counsel in Alabama.  *Maples*, 565 U.S. at 270.  "As understood by New York counsel, local counsel would facilitate their appearance, but would undertake no substantive involvement in the case."  *Id.*  With Maples' postconviction petition pending in the Alabama trial court, the New York attorneys left the law firm and could no longer represent Maples at their new place of employment.  *Id.*  "They did not inform Maples of their departure and consequent inability to serve as his counsel.  Nor did they seek the Alabama trial court's leave to withdraw.  Neither they nor anyone else moved for the substitution of counsel able to handle Maples' case."  *Id.* at 270–71.  When the Alabama trial court denied Maples' petition, the clerk sent notices to the New York attorneys, which were returned to the court as undelivered.  *Id*. at 271.  With no one representing Maples or taking any action on his behalf, his time to appeal ran out.  *Id*.  The Supreme Court found that under these "extraordinary facts," there was cause to excuse Maples' procedural default.  *Id.*  Through no fault of his own, and unbeknownst to Maples, no one was acting on his behalf, and he had no reason to suspect that he had been reduced to pro se status. *Id*.

In *Fleming*, the petitioner asserted that his attorney deceived him into believing that he, the attorney, was actively pursuing Mr. Fleming's legal remedies when, if fact, he was not. *Fleming*, 481 F.3d at 1256.  Each time Mr. Fleming asked, his counsel "assured Mr. Fleming that his petition was being prepared and that, within a week or two of that conversation, the petition would be filed.  In fact, no petition was filed." *Id*.  Mr. Fleming asserted that the AEDPA limitations period should be equitably tolled, because he "reasonably relied on his attorney's misrepresentations that he was in the midst of preparing and filing an application for post-conviction relief and Mr. Fleming had no cause to discover these misrepresentations." *Id*. at 1255.  The Court held that Fleming "has alleged enough facts to warrant, at a minimum, an evidentiary hearing to determine whether he is entitled to equitable tolling." *Id*. at 1256–57.

Here, there is no evidence that Mr. Davidson abandoned Mr. Tovar-Mendoza.  There also is no evidence that Mr. Davidson told Mr. Tovar-Mendoza that he was preparing a federal habeas petition when he was not.  Instead, he fulfilled the role for which he was hired—to seek post-conviction relief in the state court and preserve Mr. Tovar-Mendoza's opportunity to proceed in federal court.  Doc. 45-1.  According to Mr. Tovar-Mendoza's own statement, Mr. Davidson was tasked with representing him in state court to appeal his criminal cases and file a state habeas corpus proceeding, and to preserve Mr. Tovar-Mendoza's "opportunity to proceed to the Federal Courts." *Id*.  That is precisely what Mr. Davidson did.  Mr. Davidson filed notices of appeal in the state court regarding his criminal cases.  When Mr. Tovar-Mendoza's direct appeal was unsuccessful, Mr. Davidson filed a petition for writ of habeas corpus in the New Mexico district court.  Mr. Davidson followed the denial of the petition with a petition for writ of certiorari to the New Mexico Supreme Court. *Id*. at 189–90.  Because Mr. Davidson was not hired to represent Mr. Tovar-Mendoza in federal court, Mr. Tovar-Mendoza had no reason to

believe that Mr. Davidson would file a federal habeas petition on his behalf. Consequently, if he wished to move forward in federal court, he knew he needed to do so *pro se* or hire counsel to perform those duties. There is no evidence that Mr. Davidson abandoned Mr. Tovar-Mendoza or made any misrepresentations to him that would warrant equitable tolling.

### 2. *Diligence*

Mr. Tovar-Mendoza must allege with specificity the steps he took to diligently pursue his federal claims. *Yang*, 525 F.3d at 930 (internal quotations and citation omitted). He has not done so. Mr. Tovar-Mendoza's Consolidated Rule 60 Motion does not outline any steps he took in diligent pursuit of his claims. *See* Doc. 44. Mr. Tovar-Mendoza suggests that he diligently pursued his federal claims by stating that he asked Mr. Davidson to preserve his "opportunity to proceed to the federal courts." Doc. 45-1. As discussed above, however, Mr. Davidson did what he was hired to do. Nowhere in his declaration does Mr. Tovar-Mendoza state that he instructed Mr. Davidson to file a habeas petition in federal court.[8]

On the other hand, Mr. Tovar-Mendoza, having experienced success in a prior federal habeas petition, was aware that the one-year deadline existed and was running. *See* Doc. 1 at 9. He knew he could pursue a federal petition pro se, which is precisely what he did. He incorrectly believed that his deadline for filing his petition was in September 2018, *see id.*, but he did not file his petition until October 18, 2018. Mr. Tovar-Mendoza cannot show that he has diligently pursued his claim, and he is not entitled to equitable tolling.

---

[8] Mr. Tovar-Mendoza stated in his original petition that he retained attorney Daniel Salazar in April 2018 for the purpose of filing a habeas petition. Doc. 1 at 6–10. According to Mr. Tovar-Mendoza, Mr. Salazar failed to communicate with him or file a petition before the deadline. *Id*. at 2, 11–16. Mr. Tovar-Mendoza does not mention Mr. Salazar as a part of his Rule 60(b) motion or in his declaration in support of that motion. *See* Docs. 44, 45, 45-1. Given that Mr. Tovar-Mendoza's time to file a federal habeas petition expired in February 2017, his hiring of Mr. Salazar more than a year later does not demonstrate diligence.

B.  <u>Alternatively, Mr. Tovar-Mendoza's Claims Fail on the Merits</u>.

Although Mr. Tovar-Mendoza's petition is untimely, respondents argue in the alternative that his amended petition is subject to dismissal because his claims fail to satisfy the applicable standards for federal habeas relief.  Doc. 50 at 24–32.  For the following reasons, I agree.

In his amended petition, Mr. Tovar-Mendoza contends that he was denied his constitutional right to effective assistance of counsel for three reasons: (1) the state district court's denial of his motions to continue left trial counsel, Robert Tangora, with insufficient preparation time (Ground One) (Doc. 7 at 15); (2) Mr. Tangora failed to request a limiting instruction on prior-bad-act evidence (Ground Two) (*id.* at 20); and his appellate counsel, Mr. Davidson, failed to raise grounds one and two as "dead-bang winners for direct appeal" (Ground Three) (*id.* at 24).[9]  Respondents contend that Mr. Tovar-Mendoza has procedurally defaulted on Grounds Two and Three, and that Ground One is without merit.

1.  <u>Mr. Tovar-Mendoza has Procedurally Defaulted Grounds Two and Three</u>

In his original state habeas petition, Mr. Tovar-Mendoza raised a general ineffective assistance of counsel claim alleging that the trial court's failure to grant a continuance of the jury trial caused his trial attorney to be ineffective.  *See* Doc. 50-2 at 31–58.  In his second state habeas petition, Mr. Tovar-Mendoza again alleged ineffective assistance of counsel, but on two grounds (Grounds Two and Three) that were not specifically raised in his initial state habeas petition, along with a claim that his sentence was illegal.  *See id.* at 296–319.  The state district judge, Judge Stan Whitaker, entered a procedural order dismissing the ineffective assistance of counsel claims under Rule 5-802(I) as having been previously raised and litigated.  *See id.* at

---

[9] There is no dispute that Mr. Tovar-Mendoza has exhausted his available state-court remedies, or that he was "in custody" for the purposes of 28 U.S.C. § 2254 at the time he filed the amended petition.  Additionally, the amended petition is subject to the AEDPA.  Doc. 50 n.12.

423–25, 430–34.  Because these two claims were dismissed on state procedural grounds, they are procedurally defaulted.

Procedural default occurs when a state prisoner fails to raise a federal claim in compliance with state procedures, or raise them in the state court at all.  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).  If a state court would dismiss claims for their procedural failure, those claims are "exhausted" because they are no longer available.  *Id*.  "[F]ederal habeas courts must apply an important corollary to the exhaustion requirement: the doctrine of procedural default."  *Id*. (internal quotation and citation omitted).  "Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules."  *Id*.

The doctrine of procedural default "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991), holding modified by *Martinez v. Ryan*, 566 U.S. 1 (2012).  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Id*. at 729.  The "independent and adequate state ground doctrine" in federal habeas proceedings ensures that habeas petitioners cannot avoid the exhaustion requirement by defaulting their federal claims in state court.  *Id*. at 732.  "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases."  *Id*.  A habeas petitioner may only overcome procedural default by showing either "cause" and "actual prejudice," or that he is "actually innocent."  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

In New Mexico, a state trial court may dismiss a second and successive habeas petition in most instances. Rule 5-802(I) NMRA provides,

> I. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
>
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
>
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

The New Mexico Supreme Court has explained that

> The successive-writ petitioner has already enjoyed the opportunity to fully explore his constitutional claims in the postconviction setting, whereas the petitioner who makes his initial claim on direct appeal has not, and consequently, the successive-writ petitioner is in a weaker position to argue that equity confers yet another postconviction opportunity to make his claim.

*Duncan v. Kerby*, 1993-NMSC-011, ¶ 5, 115 N.M. 344, 347, 851 P.2d 466, 469.

Here, Mr. Tovar-Mendoza raised additional ineffective assistance of counsel claims in his second state habeas petition after the court already had considered ineffective assistance of counsel claims in his first habeas appeal. Doc. 50-2 at 296–319. Judge Whitaker summarily denied the ineffective assistance of counsel claims raised in the second petition, finding that they already "ha[d] been raised, litigated and resolved." Doc. 50-2 at 425, 432. In other words, Judge Whitaker declined to address Grounds Two and Three pursuant to Rule 5-802 NMRA(I)(2) because ineffective assistance of counsel had been raised and rejected in Mr. Tovar-Mendoza's prior petition. This Court cannot address these claims because they previously were adjudicated on adequate and independent state law procedural grounds and are, therefore, procedurally defaulted. Mr. Tovar-Mendoza has not presented any evidence or argument that shows that there was a cause for the procedural default, that he suffered any actual prejudice, or that he is actually

innocent.  Consequently, the Court is prevented from considering the merits of Grounds Two and Three.

### 2.  Ground One is Without Merit

In Ground One, Mr. Tovar-Mendoza contends that the state court's denial of Mr. Tangora's motion to continue deprived Mr. Tangora of sufficient time to prepare for trial and therefore deprived him of effective assistance of counsel.  Doc. 7 at 15–19.  Mr. Tovar-Mendoza asserts that a continuance would have given his counsel additional time to interview witnesses and consult a DNA expert.  *Id.* at 16, 17.  Respondents argue that the state court trial judge, Judge Whitaker, carefully considered this claim and rejected it, applying the correct standards.  Doc. 50 at 30–32.  Mr. Tovar Mendoza therefore is not entitled to relief.

A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention.  A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry.  The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final.  *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Here, there is no dispute that Mr. Tovar-

Mendoza was entitled to effective assistance of counsel at trial; thus, the law was clearly established.[10]

Because the law was clearly established, the Court next determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).  A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538

---

[10] The Supreme Court has held that not "every refusal to postpone a criminal trial will . . . give rise to . . . a presumption" of ineffective assistance of counsel.  *United States v. Cronic*, 466 U.S. 648, 661 (1984).  Without that presumption, a petitioner may "make out a claim of ineffective assistance only by pointing to specific errors made by counsel." *Id.* at 666.  That claim must be evaluated under the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish ineffective assistance of counsel under *Strickland*, a petitioner must show (i) that his or her attorney's performance was deficient and (ii) that the deficiency caused him or her prejudice, meaning that there is a reasonable probability that the result would have been different but for his or her lawyer's unprofessional errors.  *See United States v. Cruz*, 774 F.3d 1278, 1284–85 (10th Cir. 2014) (citing *Strickland*, 466 U.S. at 687).  The first prong can be met if the petitioner establishes that his or her counsel performed below the level expected from a reasonably competent attorney in criminal cases.  *Strickland*, 466 U.S. at 687–88.  To meet *Strickland's* second prong, petitioner must show that counsel's deficient performance prejudiced him or her to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Further, a court may address the performance and prejudice prongs in any order and need not address both if it concludes that the defendant failed to satisfy one of the two prongs.  *See Strickland*, 466 U.S. at 700; *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).  "[T]he burden rests on the accused to demonstrate a constitutional violation." *Cronic*, 466 U.S. at 658.

U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable."  *Id*. at 76.

Under AEDPA, state court findings of fact are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) must show by clear and convincing evidence that the determination was factually erroneous.  *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).  For ineffective assistance of counsel claims, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Prior to trial on November 14, 2011, Mr. Tangora filed a motion for continuance.  Doc. 50-1 at 244–47.  In that motion, Mr. Tangora explained that he accepted the case with the understanding that it was "ready to go."  *Id*. at 245.  He was not informed, however, of DNA evidence until October 19, 2011, at the hearing on the state's motion to join the new indictment concerning the September 2, 2002 rape charge.  *Id*. at 244.  Mr. Tangora asked for additional time to consult with an expert regarding the DNA evidence and to further investigate the facts regarding the September incident.  *Id*. at 244–45.  On November 4, 2011, Judge Whitaker denied the motion for a continuance.  *Id.* at 257.  On November 21, 2011, a jury found Mr. Tovar-Mendoza guilty of four counts.  *Id.* at 298–302.

On April 28, 2014, in his first state habeas petition after his 2011 conviction, Mr. Tovar-Mendoza argued that "[t]he lethal combination of two rulings by the trial court"—the denial of a

valid request for a continuance and the joinder of an unrelated rape charge 16 days before trial—deprived him of effective assistance at trial. Doc. 50-2 at 31–58. After holding an evidentiary hearing, Judge Whitaker issued a 22-page order denying the petition. *Id.* at 167–88. Judge Whitaker applied the *Strickland* standards and found that Mr. Tangora "exercised the skill, judgment and diligence of a reasonably competent defense attorney," and also found that none of counsel's alleged deficiencies prejudiced Mr. Tovar-Mendoza. Specifically, Mr. Tangora "was able to consult with a DNA expert before trial and decided he would not be calling him." Doc. 50-2 at 179. With regard to additional witnesses, Judge Whitaker found that Mr. Tangora was able to call witnesses to support Mr. Tovar-Mendoza's consent defense. "Tangora called three witnesses to testify that Petitioner and Lilia had an ongoing, consensual relationship." *Id.* There was only one other witness identified by Mr. Tovar-Mendoza that Mr. Tangora did not call. *Id.* There was no evidence, however, of defense counsel's efforts to locate the missing witness and whether Mr. Tangora would have been able to locate her if the continuance had been granted. *Id.* Judge Whitaker further found that Mr. Tovar-Mendoza did not present any evidence of what the witness' testimony would have been. *Id.* Ultimately, Judge Whitaker concluded that Mr. Tangora's performance was not deficient, and that even assuming any deficiency, Mr. Tovar-Mendoza had failed to demonstrate prejudice. *See id.* at 185–86.

Here, Mr. Tovar-Mendoza has not established that Judge Whitaker's decision was contrary to clearly established law or constituted an unreasonable application of that law. He does not cite any Supreme Court precedent that Judge Whitaker applied unreasonably. Nor has he shown that Judge Whitaker's factual determinations were unreasonable in light of the evidence presented. Finally, Mr. Tovar-Mendoza has not rebutted the presumption of

correctness given to Judge Whitaker's findings.  *See* 28 U.S.C. § 2254(e)(1).  Even if Mr. Tovar-Mendoza's petition was timely, he would not prevail on the merits of his claim.

## IV.   Evidentiary Hearing

An evidentiary hearing is not required in this matter.  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.").  The record in this case is sufficient to resolve the issues before the Court and it precludes habeas relief.

## V.   Certificate of Appealability

Lastly, Mr. Tovar-Mendoza is not entitled to a certificate of appealability.  No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may issue only if Mr. Tovar-Mendoza "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As set forth above, Mr. Tovar-Mendoza has failed to make this showing.  I therefore recommend that the Court deny Mr. Tovar-Mendoza a certificate of appealability.

## VI.   Conclusion

Mr. Tovar-Mendoza's petition is untimely and does not present extraordinary circumstances that would warrant equitable tolling.  Even if he had timely filed his petition, his claims fail on the merits. I therefore recommend that the Court deny Mr. Tovar-Mendoza's Consolidated Rule 60 Motion (Doc. 44) and dismiss this case with prejudice.  An evidentiary

hearing is not necessary because Mr. Tovar-Mendoza's claims are capable of being resolved on the record.  I further recommend that the Court deny a certificate of appealability.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.

---

Laura Fashing
United States Magistrate Judge